UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DIANA CREMEANS,                              )
                                             )
                Plaintiff,                   )
                                             )
        v.                                   )    No. 1:25-cv-00269-JRO-TAB
                                             )
KROGER LIMITED PARTNERSHIP I,                )
PEPSICO BEVERAGE SALES LLC,                  )
                                             )
                Defendants.                  )
                                             )

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING JOINT MOTION FOR CONTINUANCE**

Plaintiff Diana Cremeans tripped on a pallet guard near a beverage display in a grocery store belonging to Kroger Limited Partnership I ("Kroger") and suffered a large contusion to her face. She alleges negligence against Kroger and Pepsico Beverage Sales LLC ("Pepsico") under several theories of premises liability. Defendants have moved for summary judgment. Because genuine issues of material fact remain for trial, the motion is **DENIED.** Dkt. [44]. The Court also **DENIES** the joint motion for continuance. Dkt. [62].

**I. FACTS AND BACKGROUND**[1]

Defendants moved for summary judgment under Rule 56(a), so the Court views and recites the evidence "in the light most favorable to the nonmoving party

---

[1] Cremeans's record citations do not comply with the Court's requirements. Counsel is encouraged to comply with these requirements in future filings. *J. Olson Practices and Procedures* II.C.6.

and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

The parties broadly agree on the circumstances of Cremeans's trip and fall. Dkt. 53 at 2. Cremeans and her husband entered the Kroger store on Michigan Road in Zionsville, Indiana. Dkt. 45-2 at 6. This Kroger was the grocery store Cremeans visited most often. *Id.* About ten minutes into the shopping trip, Cremeans tripped as she walked past a beverage display. *Id.* at 8, 11; Dkt. 45-3 at 3. Cremeans "had no idea" what she tripped over, although she was "peripherally aware" that there was something next to her. Dkt. 45-2 at 12. She was not looking down at the ground but instead at a glass case some distance away. *Id.* at 12, 25. Cremeans fell to the ground face first. Dkt. 52-3 at 2. As she fell, she grabbed a case of soda from a Pepsi display for support. *Id.* at 1. This case fell onto her back. *Id.* at 2. Cremeans suffered a large contusion to her face. *Id.*; *see* dkt. 45-3 at 2.

The parties dispute the cause of the fall. In Cremeans's telling, her husband observed the Pepsi display near where Cremeans fell after she tripped. Dkt. 52-3 at 2. The display, ranging from waist to shoulder height, dkt. 45-3 at 3–4, sat on a wooden pallet, dkt. 52-3 at 2. Several two-inch by six-inch, black-painted boards—or "pallet guards"[2]—stood on their long edges at the base of the pallet, dkt. 52-3 at 2. These boards were not connected to each other and at

---

[2] Cremeans calls the painted board that she alleges caused her fall a "loose board," while Defendants refer to it as a "pallet guard" or "skid guard," dkt. 46 at 2. The Court will call it a "pallet guard" to avoid confusion.

least some were not secured to the pallet.  *Id.*  One black pallet guard protruded out at an angle into the aisle where Cremeans fell.  *Id.*  The aisle floor was a speckled grey color.  *See* dkt. 45-2 at 43–44.  After Cremeans fell but before paramedics arrived, a Kroger manager moved the loose pallet guard back against the pallet display and placed a yellow cone near the display.  Dkt. 52-3 at 2.

Cremeans's suit for negligence against Kroger and Pepsico followed.  After the close of fact discovery, Defendants jointly moved for summary judgment.

## II. LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) (cleaned up).  The moving party must inform the court "of the basis for its motion" and specify evidence "demonstrat[ing] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor."  *Zerante,* 555 F.3d at 584.

3

Indiana substantive law governs this case.  *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019).  Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law.  *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021).  In doing so, the Court may consider decisions from the Indiana Court of Appeals.  *See id.*

### III. ANALYSIS

The parties agree that when Cremeans fell, she was Defendants' invitee.  *See* dkt. 46 at 6; dkt. 53 at 5.  Indiana follows the Restatement (Second) of Torts when it comes to premises liability, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.

*Roumbos v. Samuel G. Vazanellis & Thiros & Stracci, PC*, 95 N.E.3d 63, 66 (Ind. 2018) (citing RESTATEMENT (SECOND) OF TORTS § 343 (Am. L. Inst. 1965)).  The parties agree this rule applies.  Dkt. 46 at 6; Dkt. 53 at 5–6.

Defendants assert three arguments, which the Court takes in turn.  First, they argue Cremeans failed to show that the loose pallet guard caused her fall because she did not see what caused her to trip and her husband only observed

4

the board in the walkway after the fall.  Second, they argue that no reasonable jury could find the pallet guard posed an "unreasonable risk" to shoppers.  Third, they argue the pallet guard was a "known or obvious" condition readily observable to a shopper exercising reasonable care, such that a reasonable shopper would have avoided tripping over it.  Because the Court finds jury questions on all fronts, the Court denies Defendants' motion.

## A.    Cause of Plaintiff's Fall

Defendants assert that "Plaintiff produce[d] no evidence to support her claim that a 'loose board' was the cause of her fall."  Dkt. 55 at 6.  They cite *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456, 458 (Ind. Ct. App. 2000), for the proposition that "[n]egligence will not be inferred . . . ."  *Hayden* further states that "an inference is not reasonable when it rests on no more than speculation or conjecture."  *Id.*

Cremeans's inference that the loose board (*i.e.*, pallet guard) caused her fall is reasonable.  Cremeans tripped by striking her foot against something.  Dkt. 45-2 at 11.  After she fell, her husband observed a pallet guard protruding into the aisle.  The Court sees nothing unreasonable or speculative about this argument; a reasonable jury could buy it.

On the other hand, Defendants argue: "Plaintiff's right foot could just have easily struck the pallet/skid guard causing a board to come loose, producing the 'loose board' observed after the fall."  Dkt. 55 at 6.  But a court may not resolve competing inferences on summary judgment; that is a matter for the jury.  *McCottrell v. White*, 933 F.3d 651, 657 (7th Cir. 2019) (quoting *Orton-Bell v.*

5

*Indiana*, 759 F.3d 768, 772–73 (7th Cir. 2014)).  Under the summary judgment standard, the Court draws reasonable inferences in Cremeans's favor and, thus, infers that the protruding pallet guard could have caused Cremeans's fall.

## B.    Unreasonable Hazard

Defendants argue the pallet guard did not present an "unreasonable risk" to shoppers under the first element of premises liability.  Dkt. 46 at 7–9.  "A condition poses an unreasonable risk of harm when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen."  *Converse v. Elkhart Gen. Hosp., Inc.*, 120 N.E.3d 621, 626 (Ind. Ct. App. 2019) (cleaned up).

Defendants principally rely on *Pickens v. Wal-Mart Stores East, LP*, No. 3:14-cv-318-CAN, 2015 WL 4997064 (N.D. Ind. Aug. 20, 2015),[3] for their argument that the beverage display presented no unreasonable risk of harm to patrons.  In *Pickens*, the plaintiff tripped over the exposed corner of a display skid.  *Id.* at *5.  That plaintiff had observed the display, including the exposed corner, before tripping over it.  *Id.*  Nothing in those facts suggests the pallet guard had loose parts or stray sections that stuck out into the walkway.

The Court reads *Pickens* to say that a typical display in a store and the guard at its base are the kind of tripping hazards a reasonable person would

---

[3] As a general matter, unpublished federal district court opinions are the least helpful case law in predicting what the Indiana Supreme Court would decide.  If there is no Indiana Supreme Court or Indiana Court of Appeals opinion on point, better to alert the Court to that fact and then argue from the key principles of law and analogous cases published by the Indiana courts.

notice and avoid. *See id.* at \*8. The Court need not decide whether *Pickens* applies the law as the Indiana Supreme Court would find it. Cremeans's case is distinguishable. Cremeans does not say she tripped over a typical display she failed to notice. Instead, she asserts a pallet guard from the base of a display protruded at an angle into the aisle in a way that was "defective and unexpected." Dkt. 53 at 7; *see* dkt. 52-3 at 2. A reasonable jury could find this condition to be outside the bounds of reasonableness and to pose an unreasonable risk of danger to store patrons.

## C.    Known or Obvious Dangers

Defendants' final argument is that the display was a known or obvious danger that a reasonable person in Cremeans's shoes would have avoided. Dkt. 46 at 9–10. Indiana law says that even in the face of an unreasonable risk, a landowner is not liable for injuries resulting from "known or obvious" dangers on the land. *Roumbos*, 95 N.E.3d at 66 (citing RESTATEMENT (SECOND) OF TORTS § 343A). The Indiana Supreme Court applies comment b of Restatement § 343A, which states that a condition is "obvious" "if both the condition and the risk are apparent to, and would be recognized by, a reasonable person in the position of the visitor exercising ordinary perception, intelligence, and judgment." *Id.* at 67 (quoting RESTATEMENT (SECOND) OF TORTS § 343A, cmt. b (Am. L. Inst. 1965)). The Restatement approach also considers a second question from the landowner's perspective: whether an objective and reasonable landowner "should expect that invitees will fail to discover or realize the danger, or will fail to protect themselves against it." *Id.*

7

In support of obviousness, Defendants cite another unpublished federal district court opinion, *Darnell v. Wal-Mart Stores, Inc.*, No. 1:16-cv-02754-MPB-JMS, 2018 WL 573094 (S.D. Ind. Jan. 26, 2018).  There, the plaintiff had seen the pallet guard over which she tripped before her fall.  *Id.* at *3.  Because that plaintiff actually saw the thing over which she tripped, the danger posed was "known."  Cremeans's case is distinguishable on two fronts.

First, as Defendants emphasized throughout briefing, Cremeans "had no idea" what she tripped over at the time of her fall.  Dkt. 46 at 3 (citing dkt. 45-2 at 12).  So the evidence viewed in the light most favorable to Cremeans shows the danger was not known to her.  Second, the obviousness of the tripping hazard presents a fact issue.

The parties omit any citation to a much more helpful opinion from their briefing: *Roumbos*.  In that case, the Indiana Supreme Court analyzed the "obviousness" of the hazard of tripping over loose wires on the floor of a hospital room.  *Roumbos* was decided after *Darnell* and comes from the highest authority on Indiana law.  The Indiana Supreme Court declined to find that loose wires on a hospital floor were an obvious hazard as a matter of law, even though the plaintiff testified that "she 'probably' would have seen the wires if she had been looking down at the floor."  95 N.E.3d at 68.  Though, the court acknowledged that it was "a close call."  *Id.*  Here, there is no similar concession by Cremeans, so it is less of a close call.  Regardless, this Court has no basis to conclude as a matter of law that an errant pallet guard "protruding outward at an angle into the aisle" next to a large pallet of beverages is what one could reasonably expect

8

to encounter if, as Cremeans testified, she was "peripherally aware" that there was something next to her in a grocery aisle while focused on looking for her next shopping item.  Dkt. 53 at 4; Dkt. 45-2 at 12, 25.  Defendants' argument that the pallet guard was "obvious" because "anyone willing to pay attention to where they were walking" would have avoided tripping over it must fail at the summary judgment stage.  Dkt. 46 at 11.

* * *

In sum, a reasonable jury could infer the pallet guard in the walkway caused Cremeans's fall, that it posed an unreasonable risk to reasonable patrons, and that it was neither a known nor obvious risk to reasonable patrons. All of these are fact issues that must be resolved by the jury, and summary judgment is accordingly **DENIED.**

**IV. MOTION FOR CONTINUANCE**

The parties have jointly moved to continue the trial and related deadlines. Dkt. 62.  In support of this motion, they note the Court has not yet ruled on the Motion for Summary Judgment addressed herein.  *Id.* ¶ 1.  As Magistrate Judge Baker informed the parties on January 13, 2026, the dispositive motion deadline was fixed at April 1, 2026, to preserve the trial date 174 days later, September 22, 2026.  Per the Court's Practices and Procedures II.D., a timeline of 180 days between the dispositive motion deadline and the trial date is generally required to provide the Court with sufficient time to review and decide dispositive motions. The parties accordingly should have anticipated a summary judgment ruling near trial.

9

The parties further suggest "additional discovery will need to be conducted," dkt. 62 ¶ 2, despite fact discovery closing March 10, 2026, and expert discovery closing May 11, 2026, dkt. 39.   This statement does not establish good cause for reopening discovery, much less a continuance of trial.

Finally, the parties state they are "presently evaluating whether a settlement conference is likely to be productive." Dkt. 62 ¶ 3.   The Court expects this Order will aid the parties in their evaluation.   In denying the last motion to extend deadlines, Magistrate Judge Baker noted, "This case has been pending more than a year, and is not overly complex." Dkt. 49.   The Court agrees.

Accordingly, the joint motion to continue trial is **DENIED**.   Dkt. [62].   The parties have the Court's leave to re-file after the August 13 mediation.   Dkt. 54. But absent an especially compelling explanation of why this case cannot be tried on September 22, the Court is unlikely to grant any continuance.

### V. CONCLUSION

Because genuine issues of material fact remain for trial, the Court **DENIES** Defendants' Motion for Summary Judgment, dkt. [44].   The Joint Motion to Continue Trial Date, dkt. [62] is also **DENIED** with leave to re-file after the August 13 mediation.   If the parties cannot resolve this matter at that mediation, dkt. 54, or otherwise, then a jury will do so at the September 22, 2026, trial.

**SO ORDERED.**

Date: 7/29/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

10

Distribution:

All ECF-registered counsel of record